AXEL JANSEN and Another v. CHARLES P. JACOBSON and
Another.[1]

December 9, 1910.

Nos. 16,890—(152).

**Evidence insufficient to justify finding no partnership existed.**
Evidence considered, and *held* not to justify findings.

Action in the municipal court of Minneapolis to recover $413.42
for alleged breach of an agreement. The facts are stated in the
opinion. There was no appearance by defendant Bruner. The case
was tried before Leary, J., who made findings of fact and as conclu-
sion of law ordered judgment in favor of defendant Jacobson. From
the order so entered, plaintiffs appealed. Reversed and new trial
ordered.

*Charles J. Traxler* and *John F. Byers,* for appellants.
*C. A. Bucknam,* for respondent.

O'BRIEN, J.
Defendant Jacobson, at the solicitation of defendant Bruner, con-
tracted for the purchase of a number of acres of land, made a par-
tial payment upon the contract, and then entered into an agreement
with Bruner contemplating the subdivision of the land into build-
ing lots and the sale thereof through their joint efforts. The land
was platted into an addition, and Bruner opened an office and ad-
vertised the lots under the name of George W. Bruner & Co. It was
agreed between Bruner and defendant that the net profits from the
transaction should be equally divided between them. Jacobson's
contract for purchase was dated May 18, 1907. On October 22,

[1]Reported in 128 N. W. 824.

[Note] As to effect of agreement to share profits to create a partnership, see
note in 18 L.R.A.(N.S.) 963.

1907, a notice of cancellation was served upon him because of his failure to make deferred payments. This notice does not appear to have been effective, and subsequently some arrangement was made between Jacobson and the owner of the land, the exact nature of which is not disclosed by the record. On November 2, 1907, Bruner executed a contract of sale of one of the lots to plaintiffs, received some portion of the purchase price, and subsequently received monthly payments until the aggregate amounted to the sum of $313.42. The contract with plaintiff was executed by Bruner, and signed, "Charles P. Jacobson, by Geo. W. Bruner & Co."

Upon failure to obtain a conveyance of the lot pursuant to the contract, plaintiffs brought this action against Jacobson and Bruner as partners, naming them also as individuals. Jacobson answered, denying the partnership and all responsibility for the contract. After a trial, the court found the execution of the contract by Bruner as described, the payments up to August 2, 1909, amounting to the sum stated, and, further, "that upon said date, the 2d of November, 1907, said George W. Bruner and said Charles P. Jacobson were not copartners in any way, and that the said Bruner had no authority to make said contract on the part of said Jacobson," and also that Jacobson had received none of the money paid by plaintiffs, and that since he was informed of the contract, and in September, 1909, he notified plaintiffs that he had nothing to do with the contract and would not perform it, and judgment was directed in favor of defendant Jacobson. Subsequently a motion for a new trial was denied, and plaintiffs appealed.

Without attempting to state the testimony in detail, we think there can be no doubt that Jacobson and Bruner were partners as to third persons dealing with them in the sale of this property, so long as the original plans made by them for its sale continued. It was not disputed that the firm name of George W. Bruner & Co. was used in advertising and in other ways, nor that Bruner was actively engaged in assisting in the platting of the property and in the subsequent attempts to sell it. The attempt the defendants were then making was to sell a sufficient number of lots to enable them to make the second payment upon the contract. This they failed to do, and the

original owner attempted to cancel the contract by serving the notice of October 22, 1907.

The testimony is not very clear as to what took place from this time on; Bruner insisting that they continued with the original plan for some time, but this is denied by Jacobson. Jacobson testified as follows: "Q. When did Mr. Bruner first call your attention to this contract? A. I think it was in the latter part of November, 1907. Q. What did he say to you about it at that time? A. Said, 'Here is a contract; I sold a lot.' That is the first time he called my attention to it. Q. Did you take it and look at it at that time? A. No; I did not. Q. Now state what you said. A. I said: 'I will have nothing to do with it. I have already told you this selling business is up, because I cannot give title to anything as long as the thing stands as it is.' Q. What did Mr. Bruner say to you? A. He said nothing; put the contract back in his desk. Q. Did he ever call your attention to it again? A. Never."

He then testified that the contract was next brought to his attention in August, 1909, and that he ascertained the address of Axel Jensen, and notified him that the contract was ineffective. Jacobson further testified that he had employed Bruner as his agent, and had terminated the employment on October 22, 1907, when the notice of cancellation was served upon him.

We are unable to avoid the conclusion that under all the circumstances of this case Jacobson did not perform his full duty to the plaintiffs when he was informed in November by Bruner that he (Bruner) had executed a contract to them for the sale of one of these lots, and that, even if any partnership between them was terminated upon October 22, the relations between Jacobson and Bruner were such, and their course of business had been such, that when Bruner informed Jacobson of this contract it became his duty to investigate it, and do then just what he did in August, 1909, viz., notify plaintiffs that the contract would not or could not be carried out. The learned trial judge seems to have based his conclusion solely upon the finding that Bruner and Jacobson were not partners on November 7, 1907; but this alone would not relieve Jacobson from the duty which

he owed to the plaintiffs, in view of the past relations existing between himself and Bruner.

It is well settled that if one, by his course of dealing with another, leads third parties to believe in the existence of a copartnership, those dealing with the firm under such belief are entitled to hold responsible all the apparent members of the firm. But, even if no such partnership existed, and the contract between Bruner and Jacobson was solely one of agency, it would still be Jacobson's duty to protect innocent third persons dealing with his agent, and of which dealings he had notice.

Order reversed and new trial ordered.