Charles **SCHLICHENMAYER**, d/b/a Schlichenmayer Livestock Sales, Plaintiff and Appellant,

v.

Melinda **LUITHLE**, Defendant and Appellee.

Civ. No. 8960.

Supreme Court of North Dakota.

June 27, 1974.

Rehearing Denied Aug. 26, 1974.

Wheeler, Wolf, Wefald & Durick, Bismarck, and William F. Lindell, Washburn, for plaintiff and appellant.

Duffy & Haugland, Devils Lake, for defendant and appellee.

VOGEL, Judge.

This is an appeal from a judgment in favor of the defendant in an action tried by the court without a jury, which was brought by Schlichenmayer, an individual operator of a livestock sales ring, against Melinda Luithle, the widow of a part-time cattle buyer and farmer.

The complaint is in two counts. The first count alleges that the deceased husband of the defendant bought cattle at the plaintiff's sales ring between January 6 and March 24, 1969, for $36,235.01, that the husband paid for them with insufficient-funds checks and resold the cattle to others, and that he made good only $6,161.-35 of the indebtedness, leaving unpaid $30,073.36. It further alleges that the husband and the defendant "took the money realized from the resale of said cattle and appropriated it to the benefit of the defendant. That the money was appropriated to pay debts of a direct benefit to the defendant. That the defendant knew of the above transactions and was present during certain of them." The second cause of action alleged that certain damages were caused "by reason of the fraudulent action of the said decedent of which the defendant had knowledge."

It will be seen that the complaint charges fraud, either by the defendant or her husband or both. During the trial, various other theories were advanced, including the claims that there was a partnership between the defendant and her husband, that she was unjustly enriched, and that she was liable in tort for the acts of her husband.

The proof indicates that the deceased husband was short of capital and bought cattle from the plaintiff with bad checks. When he sold the cattle he failed to use the proceeds to pay off the debt to the plaintiff and instead used some of the funds to make payments for ordinary family expenses and some other of the funds to make payments on the purchase of land held in joint tenancy with his wife, the defendant. However, the amounts used for family purposes are only a small part of the missing money; the land payment

amounted to only approximately $1,100; and most of the funds were not traced.

The connection of the wife to all of this is tenuous, at best.

She testified that her husband managed the farm and she did not participate, except by milking cows occasionally and otherwise assisting around the farm as most farm wives do. She knew nothing about the financing of his cattle-buying operations, which started only in January, some four months prior to his death. She knew that he customarily made $1,100 payments in April of each year on a land contract for himself and another $1,100 for a brother, who subsequently reimbursed him. She knew that he had a separate bank account in the Dakota National Bank of Bismarck, but knew nothing about his banking operations there. The husband and wife had a joint account in the Farmers Security Bank of Washburn, on which she wrote checks for groceries and electricity. She knew that he often went to sales rings where cattle were sold, but not what he did there. She had a job of her own in a local retail establishment, and occasionally went to the sales ring after work to meet her husband and wait for him to come home with her. She cosigned a note when her husband borrowed money from the Farmers Security Bank of Washburn. She was present once when the plaintiff Schlichenmayer and her husband were "doing settlements," as her husband described it to her, but that's all she knew about the meeting. She was waiting for him to go home at the time and heard no conversation.

Her testimony on the foregoing matters was largely undisputed. A banker testified that she was present when her husband gave the bank information as to his assets on a financial statement which showed the joint-tenancy property as belonging to him. The banker did not say that she participated in the conversation or heard it. Similarly, the plaintiff Schlichenmayer testified that she was present at a time when Schlichenmayer and her husband were talking about some records and about selling some livestock. Testimony as to the contents of these conversations was not permitted when an objection to the effect that the conversations violated the "dead man's statute," Section 31–01–03, N.D.C.C., was sustained.

She testified that her first knowledge of the indebtedness of her husband, or his insolvency, came after his death.

Probate records of the estate of the husband were received in evidence. They show that the estate is insolvent and that it consisted largely of machinery and other personal property of the value of more than $60,000. In addition, for tax purposes, it showed real estate in joint tenancy with the defendant wife, as well as a joint-tenancy bank account with her. The claims against the estate far exceeded the assets, and a claim filed by the plaintiff Schlichenmayer for the full amount of his loss was allowed but was not paid because of the lack of funds.

The plaintiff asserts that Mrs. Luithlc benefited from the expenditures of the funds which her husband unlawfully obtained by selling the livestock he had bought from the plaintiff with checks which were later returned unpaid because of insufficient funds. As we have indicated, he variously claims to be entitled to recover because of an alleged partnership between husband and wife; or under a theory that the defendant was unjustly enriched; or that she is somehow liable in tort for her husband's acts.

He also claims that the wife should somehow be held liable to turn over the proceeds of the crop on the joint-tenancy land after the husband's death. The husband died on April 29, 1969, at which time part of the cropland was seeded. The remainder was seeded after his death.

The plaintiff claims that the trial court erred procedurally in enforcing the "dead man's statute," Section 31–01–03, N.D.C.C. The trial court filed a memorandum opin-

ion and held against the plaintiff on all his contentions. We affirm.

■ As to the claim of partnership, we find no credible evidence to sustain the claim that the husband and wife were partners. Joint tenants are not, merely because of the joint ownership, partners [Sec. 45–05–06(2), N.D.C.C.], nor are husband and wife, merely because of the marriage, partners [Sec. 47–02–05, N.D.C.C.] Partnership arises from contract, and a partnership between the parties arises only out of the contract between them as expressed in their agreement or as implied from their dealings with each other. Degen v. Brooks, 77 N.D. 514, 43 N.W.2d 755 (1950).

■ As to third persons, there may be an "ostensible partnership" whereby persons who are not in fact partners may be held liable as such by reason of their conduct if the conduct justifies a third party in believing that the partnership exists and justifies him in relying on that belief in acting to his detriment. But to establish an ostensible partnership, the person claiming the existence of it must prove that the persons to be charged as partners either held themselves out to be partners or knowingly or negligently permitted others to do so. Circumstantial evidence to establish such an ostensible partnership must be inconsistent with any other reasonable hypothesis than the existence of a partnership. Oelkers v. Pendergrast, 73 N.D. 63, 11 N.W.2d 116 (1943). The mere cosigning of a note does not make a cosigner a partner with the other signers. Oelkers v. Pendergrast, *supra.*

■ We find nothing in the facts summarized above to indicate the existence of a partnership, either actual or ostensible. The indications are that the plaintiff dealt with the husband in his individual capacity. There is no reliance shown on the existence of a partnership with the wife, nor is there any proof that such a partnership existed. Instead, the facts indicate nothing but the usual husband-and-wife cooperation in a farming enterprise in the name of the husband, where the wife took little or no part in the management of the farm and the business was done by the husband.

■ The case is much like Ogallala Fertilizer Co. v. Salsbery, 186 Neb. 537, 538, 184 N.W.2d 729, 730 (1971), where the Nebraska court said:

"Were Herbert and Marcia H. Salsbery partners in their farming operations? As husband and wife, they, like many other farm couples, could have well maintained a joint checking account upon which they both drew to pay farm and personal bills and in which the farm income was deposited. In this sense, both would share in the profits or losses from the farming enterprise as do business partners. Yet this, being a quite usual marital arrangement, standing alone, is insufficient to establish a partnership, it being quite consonant with a husband's duty to support his wife, and a wife's duty as a helpmate."

In support of his claim, the plaintiff cites Schriock v. Schriock, 128 N.W.2d 852 (N.D.1964), and Brandhagen v. Burt, 117 N.W.2d 696 (N.D.1962).

In Schriock v. Schriock we held that a court could disregard the legal fiction of a separate corporate existence in order to reach property which a divorced husband had transferred to his second wife or to a newly created corporation in order to avoid the payment of a judgment in favor of his first wife. In *Brandhagen,* we held that a wife who knew that her husband had agreed to allow the owner of adjoining property to use a wall of the building held in joint tenancy as a party wall could not stand by for 11 years without protest and then claim her legal rights. We find nothing in the facts of the present case to invoke the rule of either of the cases cited by the plaintiff.

■ We do not believe that the principle of unjust enrichment applies here.

Mrs. Luithle was the joint tenant in real property acquired many years earlier by her husband and herself. Mrs. Luithle obtained her interest in the joint-tenancy real estate not from her husband's estate but by reason of the original joint-tenancy deed. Joint tenancy is not an estate of inheritance; a joint tenant who dies leaving a surviving tenant has no interest which he may devise. In re Kaspari's Estate, 71 N. W.2d 558 (N.D.1955); Hagen v. Schluchter, 126 N.W.2d 899 (N.D.1964). The creditors of the decedent might have levied upon the decedent's interest in the real estate during his lifetime, but upon his death the title passed to the cotenant free of all claims of creditors, and subject only to payment of estate taxes. See Section 57–37–06, N.D.C.C.; In re Kaspari's Estate, *supra*; and Hagen v. Schluchter, *supra*.

■ The crops grown on the land were the property of Mrs. Luithle. When the land was transferred by operation of law to the wife upon the death of the husband-joint tenant, the crops planted prior to his death also became her property. Growing crops are part of the real estate. Tanous v. Tracy, 55 N.D. 100, 212 N.W. 521 (1927).

■ That part of the crop planted after the death of the husband similarly was the property of the wife, since the land then belonged to her alone.

■ The doctrine of unjust enrichment applies only when a person has and retains money or benefits which in justice and equity belong to another [Straube v. Bowling Green Gas Co., 360 Mo. 132, 227 S.W.2d 666, 18 A.L.R.2d 1335 (1950)]. We find no basis for invoking the doctrine here, since the defendant's right to the property upon the death of her husband antedated by many years the acts of the husband which are claimed to have resulted in the unjust enrichment of the wife. See Hendrickson v. Syverson, 82 N.W.2d 827 (N.D.1957).

■ Mrs. Luithle was absolutely entitled to the joint-tenancy property upon the death of her husband, regardless of whether his estate was solvent or insolvent. There could scarcely be an "unjust" enrichment in her accepting what the law grants without any obligation to make restitution or payment. Mehl v. Norton, 201 Minn. 203, 275 N.W. 843, 113 A.L.R. 1055 (1937).

The plaintiff asks us to follow the ruling of Bush v. Kramer, 185 Neb. 1, 173 N.W. 2d 367 (1969), where a surviving wife was held liable for pasturage of cattle after the death of her husband. But the facts in that case were much different from those presented to us. The plaintiff there was entitled to a lien for the care of the cattle, and the court further stated:

"The evidence in this case shows substantial participation by the defendant in the cattle transaction. The bank loan for the purchase and maintenance of the cattle was negotiated by the defendant and secured by a security agreement executed by her. The cattle were paid for with funds from the joint bank account and were branded with a brand which was jointly owned. When the cattle were sold, the proceeds of the sale were used to pay off the bank loan, resulting in a direct benefit to her. Under these circumstances, the defendant should be required to pay the balance due the plaintiff for the reasonable value of the pasturage furnished." 173 N.W.2d at 369.

Of all the circumstances mentioned, only the use of the proceeds of the sale of cattle is similar, and then only in part, to the facts of the present case.

## THE DEAD MAN'S STATUTE
### (Sec. 31–01–03, N.D.C.C.)

■ Over repeated objections that the "dead man's statute" precluded such testimony, the plaintiff was allowed to cross-examine Mrs. Luithle as to transactions be-

tween her husband and herself. This cross-examination was proper, since the prohibition of the statute, where it applies, extends only to testimony by a party as to transactions with the deceased person "unless called to testify thereto by the opposite party."

The plaintiff objects further to the ruling of the trial court prohibiting him from testifying directly as to his own conversation with the decedent. The statute prohibits testimony by a party as to transactions with a decedent if the action or proceeding is "by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, . . ." The plaintiff asserts that he was not suing Mrs. Luithle as an "executor, administrator, heir at law, or next of kin" but was suing her as an alleged partner of the deceased.

In resolving this question, we note first of all that the plaintiff was given a very broad leeway in testifying as to transactions with the decedent, with the only real limitation being a prohibition against his own direct testimony as to one conversation in the "presence" of Mrs. Luithle, which she testified she did not hear.

Secondly, we note that we have consistently confined the application of the "dead man's statute" to the letter of the statute and have declined to extend it by interpretation. McDonald v. Miller, 73 N.D. 474, 16 N.W.2d 270 (1944); Knoepfle v. Suko, 108 N.W.2d 456 (N.D.1961). And we have, on occasion, criticized the statute in rather strong language. In St. John v. Lofland, 5 N.D. 140, 64 N.W. 930 (1895), we said:

"Statutes which exclude testimony on this ground are of doubtful expediency. There are more honest claims defeated by them by destroying the evidence to prove such claim than there would be fictitious claims established if all such enactments were swept away, and all persons rendered competent witnesses. To assume that in that event many false claims would be established by perjury is to place an extremely low estimate on human nature, and a very high estimate on human ingenuity and adroitness. He who possesses no evidence to prove his case save that which such a statute declares incompetent is remediless. But those against whom a dishonest demand is made are not left utterly unprotected because death has sealed the lips of the only person who can contradict the survivor, who supports his claim with his oath. In the legal armory, there is a weapon whose repeated thrusts he will find it difficult, and in many cases impossible, to parry if his testimony is a tissue of falsehoods,—the sword of cross-examination." 64 N.W. 930, at 931.

Adhering to the policy of strict construction of the "dead man's statute," we hold that the trial court erred in enforcing the statute in this case, but, as will appear later, we find the error harmless.

In Mowry v. Gold Stabeck Co., 48 N.D. 764, 186 N.W. 865 (1922), we said:

"The statute, precluding testimony concerning transactions had with deceased persons, is specific in its character, and relates only to actions wherein the personal representative, heirs, or next of kin are parties. [Citation omitted.] The plaintiff did not appear in that capacity; he claims title through a deed made by his [deceased] father during his lifetime. The statute cannot be extended by judicial construction beyond its plain application. [Citations omitted.]" 186 N.W. 865, at 866.

In Barlow Grain & Stock Exchange v. Nilson, 57 N.D. 624, 223 N.W. 700 (1929), a creditor claimed it was the third-party beneficiary of a contract made between the defendant wife and her deceased husband under which the wife agreed to clear the

debts of her husband in consideration of his transfer of property to her. We said:

"The attempt here is to hold the defendant personally liable upon a contract made with her husband. She is not sued in the capacity of an executor, administrator, heir at law, or next of kin, and [her husband's] estate would not be affected, except beneficially, by the plaintiff establishing the contract alleged." 223 N.W. 700, at 701.

In Miller v. First National Bank of Linton, 62 N.D. 122, 242 N.W. 124 (1932), we held that the claim, if the statute is to apply,

" . . . must be either a demand against the estate upon which judgment may be rendered or ordered entered for or against the estate or a demand by the estate in which judgment might be ordered for or against the estate, . . ." 242 N.W. 124, at 127.

By way of contrast, in International Shoe Co. v. Hawkinson, 73 N.D. 677, 18 N.W.2d 761 (1945), we held the "dead man's statute" applicable in a case where one of the defendants, a partner and administratrix of the other partner being sued, was representing the estate in the action in a matter in which the estate had an interest.

In the present case, the plaintiff's claim against the decedent's estate has been accepted and allowed and there is no argument over the extent of the estate's liability.

■ We therefore hold that the conversation between the plaintiff and Mr. Luithle was not barred by the "dead man's statute" because Mrs. Luithle was not sued in the capacity of executor, administrator, heir at law, or next of kin, and because no judgment could be ordered for or against the estate in the action or any subsequent action.

However, we find the error harmless. The court found that there was no partner-ship between Mr. and Mrs. Luithle. We agree. In the absence of a partnership or some other theory upon which the wife could be held liable for the individual debt of her husband (and we have found no such appropriate theory here), a mere conversation between her husband and her husband's creditor would be hearsay in the absence of any proof that she participated in or heard the conversation. There is no such proof here.

In any case, the plaintiff made no offer of proof as to the content of the conversation. In the absence of an offer of proof as to the contents of the conversation, we could not hold that any prejudicial error was committed. New York Life Insurance Co. v. Hansen, 71 N.D. 383, 2 N.W.2d 163 (1941).

■ In his reply brief on appeal, we find the plaintiff's assertions as to what the testimony would have been if he had been allowed to testify as to his conversation with the decedent. He asserts that the testimony would have been to the effect that certain cattle were released by the plaintiff to the decedent on the day of the conversation in exchange for new checks issued by the decedent only after the decedent "in the presence of the defendant" stated that if anything should happen to him he and the defendant were in business together and she would take care of the bills, and that the defendant did not deny the representation of the decedent, and the plaintiff relied upon that fact. If the testimony had been admitted, in our opinion the result of the case would not have been changed. The testimony would not have established a partnership, either actual or ostensible [Oelkers v. Pendergrast, 73 N.D. 63, 11 N.W.2d 116 (1943)], nor would it have established an obligation on the part of Mrs. Luithle to pay her husband's debts out of her separate property.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.