Larry BAUER, Plaintiff, Appellee, and Cross-Appellant,

Leo Joseph Bauer, Jr., and Marie Lillian Bauer, Plaintiffs,

v.

Ray GRANER and Evelyn Graner, Defendants, Appellants, and Cross-Appellees,

Randy Graner and the County of Morton, Defendants.

Civ. No. 9428.

Supreme Court of North Dakota.

May 3, 1978.

Rehearing Denied May 12, 1978.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for plaintiff, appellee and cross-appellant; argued by Albert A. Wolf, Bismarck.

C. J. Schauss, Mandan, for defendants, appellants and cross-appellees.

ERICKSTAD, Chief Justice.

This is an appeal by Ray and Evelyn Graner, defendants and appellants, from the judgment and the order denying the motion for a new trial of the Morton County District Court. Larry Bauer, plaintiff, appellee, and cross-appellant, also appeals from the judgment which was in favor of Bauer and against the Graners in the amount of $37,230 plus interest and costs.

The main issues before us are whether or not the trial court erred under the circumstances of this case in determining the comparative negligence of the parties and in determining that Evelyn Graner was liable for the negligence of her husband, Ray Graner.

This case involves a motorcycle accident which occurred on June 26, 1974, in which Bauer was seriously injured. As a result of the accident, Bauer suffered from retrograde amnesia and remembers nothing which occurred the evening of the accident. There were no eyewitnesses to the accident. Therefore, it is impossible to know for certain the exact facts surrounding the accident.

What is known is that Bauer left his farm home on his motorcycle about 9:00 p. m. on June 26, 1974, traveling in the direction of the place where the accident occurred. This was testified to by Bauer's sister and brother, Brenda and Darrel Bauer. They also testified that the sun was starting to set at that time but that it was still light. Darrel also testified that it would only take a few minutes to reach the place of the accident from their farm.

Wayne Smith testified that he was working in his field and saw Bauer drive by heading north on the county road at a point between the Bauer farm and the place where the accident occurred. He also testified that the sun was still up but that it was close to the horizon.

The next person to see Bauer was Glen Smith, who arrived at the scene of the accident at about 2:00 a. m., June 27. He found Bauer lying unconscious on the road to the north of a pile of gravel on the road, and the motorcycle lying in the road several feet away from Bauer.

Matt Erhardt, a highway patrolman, arrived at the scene of the accident about 3:00 a. m. He found a tire track in the gravel pile which he believed was left by Bauer's motorcycle. This mark, according to his testimony, was approximately in the center of the road. His opinion was that the motorcycle hit the gravel and went into the air and out of control. He said that Bauer's body ended up about 47 feet to the north of the gravel pile with the motorcycle skidding on for a further distance. Bauer and the motorcycle, according to Erhardt, came to rest about in the middle of the road, with the motorcycle slightly more to the east. Erhardt said that the physical evidence was consistent with an attempt to avoid the gravel pile. He also testified, though, that the physical evidence was consistent with an attempt to jump the motorcycle over the gravel pile.

There is no dispute in the evidence as to how the gravel got on the county road. Randy Graner, on June 20, 1974, was driving a truck loaded with gravel to be used at the Graner farm when the bolts broke on a back wheel of the truck. He stopped the truck on the county road and contacted his father, and together they repaired the wheel. In order to accomplish this, they dumped about one-half of the gravel from

the truck onto the road. Ray Graner and his son both testified that after the wheel was fixed, they reloaded onto the truck and another pickup about one-half of the gravel on the road and threw some of the rest into the ditch. The remainder of the gravel they left on the county road and its west shoulder.

Ray Graner testified that he talked to two county employees after the truck broke down and before the gravel was dumped and asked them to place warning flags on the road. This was done by the county workers. Ray Graner also testified that on June 21, he talked to George Kary, another Morton County employee who operated a maintainer, and that he asked Kary to level or move the gravel from the county road and that Kary agreed to do so. Kary denies having this conversation or even being in the area where the alleged conversation took place. In any event, the gravel was left on the road from June 20 until the night of the accident, June 26.

The parties are in agreement that Bauer approached the gravel pile from the south. The parties also agree that there is a hill to the south of where the gravel was on the road, and a culvert or bridge between the hill and where the gravel pile was located. Bauer contends that this culvert or bridge was in a state of disrepair (the extent of the disrepair is in conflict) and speculates that this condition of the culvert or bridge may have caused him to focus his attention on the culvert or bridge and not on the road ahead.

The testimony concerning the distance from the top of the hill to the south to the gravel pile, and the bridge to the gravel pile, varied considerably. Generally the testimony of the witnesses was that the hill was from 1,000 to 1,500 feet from the gravel pile and that the bridge was from 50 to 1,500 feet from the gravel pile.

There was also a conflict in the testimony of the witnesses as to the area of the road covered by the gravel and its depth. Most of the witnesses testified that the gravel extended just over the center of the road, although at least one person testified that the pile extended over three-fourths of the road. All of the witnesses testified that there was room for a vehicle to pass around the west side of the pile and many vehicles had done so during the time the gravel was on the road. The testimony concerning the depth of the pile varied from 3 feet to 16 inches at its deepest point. Erhardt testified the depth of the gravel pile where he found the track to be 17 inches.

There were also differences in the testimony of the several witnesses as to how far to the south this gravel pile was visible. The testimony varied from 400 to 1,500 feet in the daylight, and estimates down to 150 feet at night. Erhardt testified that the gravel could not be recognized as a hazard until a person was about 200 feet away from it, even though a person could see the gravel from a greater distance.

There also appears to be some dispute over how well the gravel blended in with the road. Most of the witnesses testified that the road on which the accident occurred was a dirt road, although Erhardt testified that it was a gravel road. There was some testimony that the gravel was a lighter color than the road, while there was other testimony that the color of the gravel and the road were about the same.

Finally, there appears to be no dispute that the flags posted by the county workers and Randy and Ray Graner had fallen down before the accident occurred, and were down at the time Bauer was found unconscious at the scene of the accident.

This case was heard before the Morton County District Court sitting without a jury. The trial court determined that the negligence of Ray Graner and Bauer both contributed to the accident and apportioned the negligence in the following manner: 51% to Graner; 49% to Bauer. The trial court also determined that the negligence of Ray Graner was chargeable to Evelyn Graner. Pursuant to those determinations, the district court judgment was entered on May 16, 1977, in favor of Bauer and against Ray and Evelyn Graner. The total amount of damages was found to be $73,000, which, when reduced according to Section 9–10–07,

N.D.C.C., resulted in damages in favor of Bauer in the amount of $37,230 plus interest and costs.

The first issue on this appeal is whether or not the trial court erred in apportioning the negligence in the following manner: Ray Graner, 51%; Larry Bauer, 49%.

■ We have often said in the past that issues of negligence, proximate cause, and contributory negligence ordinarily are questions of fact for the trier of fact unless the evidence is such that reasonable minds can draw but one conclusion, and the findings of fact by the trial court will not be set aside unless clearly erroneous. *Miller v. Trinity Medical Center*, 260 N.W.2d 4 (N.D. 1977); *McKechnie v. O'Neil*, 252 N.W.2d 875 (N.D.1977); *Kresel v. Giese*, 231 N.W.2d 780 (N.D.1975). That statement applies equally as well to the question of comparative negligence which is applicable in this case, and we, therefore, will not set aside the trial court's finding of the apportionment of the negligence unless such a finding is clearly erroneous. *See Miller v. Trinity Medical Center, supra* at 7. *See also* Rule 52(a), N.D.R.Civ.P.

■ Bauer, in his cross appeal, contends that the trial court erred in failing to apply the presumption of due care on his behalf and in attributing 49% of the negligence to him. The presumption of due care on Bauer's behalf arises from the fact that he suffered retrograde amnesia as a result of the accident and because there were no eyewitnesses to the accident. The presumption of due care on the part of someone who suffers from retrograde amnesia was adopted in North Dakota in *Thompson v. Nettum*, 163 N.W.2d 91 (N.D.1968). In syllabus ¶ 2 of that opinion, we said:

"In an action alleging negligence, it is presumed that an injured party was exercising ordinary care and diligence and obeying the law where the injured party has suffered retrograde amnesia from injuries sustained in the accident and there were no eyewitnesses." 163 N.W.2d at 93.

There is no dispute in this case that Bauer suffered from retrograde amnesia and that the presumption of due care is applicable. Bauer contends, however, that the trial court failed to apply this presumption. This contention is based on the fact that the trial court, in its findings of fact and conclusions of law, did not mention the presumption of due care or state any evidence relied on by the court to rebut the presumption.

■ We do not believe that merely because the trial court failed to mention its disposition of the issue of the presumption of due care in its findings of fact and conclusions of law that it follows that the court did not properly consider the presumption. We note that the trial court in its memorandum opinion on motion for new trial specifically said that the presumption of due care was rebutted to the extent that the court found the plaintiff to be 49% negligent.

Having determined that the trial court determined the issue of the presumption of due care, there is still the question of whether or not the trial court properly found the presumption of due care to be rebutted to the extent of finding Bauer 49% negligent.

■ Bauer contends in his brief that once this presumption of due care is established that it takes irrefutable evidence to rebut the presumption. He cites 22 Am.Jur.2d Death § 215 as authority for that contention. In looking at that section and the case referred to in the footnote to that section, *United States v. Fotopulos*, 180 F.2d 631 (9th Cir. 1950), we conclude those citations only stand for the proposition that irrefutable evidence is needed to overcome a verdict of a jury or a finding of a court of no negligence based on a presumption of due care. It is not necessary at the trial level to have irrefutable evidence to rebut the presumption of due care.

What evidence is necessary to rebut the presumption of due care in North Dakota is set out in Rule 301, N.D.R.Ev.

"(a) *Effect.* In all civil actions and proceedings not otherwise provided for by statute or by these rules, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate. A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Rule 301(a), N.D.R.Ev.

*See also* Procedure Committee Notes—Rule 301, N.D.R.Ev.

■ In this case, therefore, the Graners had the burden of proving by credible evidence the nonexistence of the presumed fact, *i. e.* due care of Bauer, was more probable than its existence. The trial court, in order to hold as it did, had to find that this burden was met by the Graners.

■ In reviewing the evidence before the trial court, we do not believe the trial court erred in determining the presumption of due care was rebutted by sufficient evidence to show that it was more probable than not that Bauer was not exercising due care at the time of the accident. The evidence which would rebut the presumption and show that Bauer was negligent is the evidence which indicates that Bauer should have seen the gravel pile and recognized it as a hazard in time to maneuver his motorcycle around the gravel pile. The fact that he did not go around the gravel pile indicates that he either intended to jump the gravel pile or else failed to maintain a proper lookout. It cannot be disputed that a person driving a vehicle has a duty to maintain a proper lookout. *Schuh v. Allery,* 210 N.W.2d 96, 99 (N.D.1973); *Cose v. Towner County,* 102 N.W.2d 538, 540 (N.D. 1960).

■ The Graners also contend that the trial court erred in apportioning the negligence in this case. They contend that the negligence of Bauer was equal to or greater than that of Ray Graner, in dumping and leaving the gravel on the road, as a matter of law. If this contention is correct, then under the North Dakota doctrine of comparative negligence, § 9–10–07, N.D.C.C., Bauer would be barred from any recovery. In support of this contention, the Graners cite *Anderson v. Stokkeland,* 125 N.W.2d 665 (N.D.1964). In *Stokkeland,* a pile or a ridge of gravel was left on a road by a contractor working for the township board. There was sufficient room for the vehicle in which the plaintiff was riding to stay in its proper lane without striking the gravel. The car which the plaintiff was driving apparently went out of control and then hit the gravel. This court said that there was sufficient evidence upon which the jury could have found that the actions of the driver of the car alone were responsible for the accident. *Stokkeland* is thus distinguishable, not only on the facts, but also because this court merely upheld the jury finding in that case. *Stokkeland,* therefore, does not require us to overturn the finder of fact in this case.

The Graners also cite five cases from Minnesota and Wisconsin, where the Supreme Courts of those states overturned jury verdicts or upheld directed verdicts and ruled as a matter of law that the negligence of the plaintiff was equal to or greater than that of the defendant. *Winge v. Minnesota Transfer Railway Company,* 294 Minn. 399, 201 N.W.2d 259 (1972); *Blanchard v. Terpstra,* 37 Wis.2d 292, 155 N.W.2d 156 (1967); *Vandenack v. Crosby,* 6 Wis.2d 292, 94 N.W.2d 621 (1959); *Heine v. Oswald Jaeger Baking Co.,* 275 Wis. 26, 80 N.W.2d 791 (1957); *Hephner v. Wolf,* 261 Wis. 191, 52 N.W.2d 390 (1952). The Graners point out that the Minnesota and Wisconsin courts were also dealing with the doctrine of comparative negligence and cases where the plaintiff's vehicle ran into an object on the road. Those cases are distinguishable from the case before us, however, in two aspects. First, the plaintiff in those cases ran into big objects such as trains, trucks, wreckers and cars, which would be more visible than a pile of gravel 16 inches to three feet deep on a dirt road. Second, in none of those cases was there a presumption of due care on behalf of the

plaintiff as there is in the case now before us.

It is true that there may be cases in which this court must rule as a matter of law that the trier of facts' findings as to the apportionment of the negligence of the parties is in error. In fact, we did so hold in *Demaray v. Ridl*, 249 N.W.2d 219 (N.D. 1976). In *Demaray*, one ground for our overturning the jury's finding that the plaintiff had been negligent to the extent of 50% was that we found no evidence to justify such a finding. In the case now before us, however, there is evidence to support the trial court's finding concerning the apportionment of the negligence.

In light of the above discussion, it cannot be said that the finding of the trial court concerning the apportionment of the negligence is clearly erroneous. We therefore uphold that finding of the trial court.

Bauer also contends, in his cross appeal, that the trial court erred in allowing the speculative testimony of patrolman Erhardt, suggesting the possible deliberate attempt to jump the gravel pile by Bauer. We do not believe the receipt of that testimony over the objection of Bauer was error. It must be remembered that a trial judge in a nonjury case should ordinarily admit all evidence which is not clearly inadmissible. *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 99 (N.D.1977); *Schuh v. Allery, supra*, 210 N.W.2d at 99–100.

The final issue in this appeal is whether or not the trial court erred in ordering judgment against Evelyn Graner. Evelyn contends that she is not liable for the torts of her husband and cites Section 14–07–08(1), N.D.C.C., to support that contention. That section reads:

"The separate and mutual rights and liabilities of a husband and a wife are as follows:

1. Neither the husband nor the wife as such is answerable for the acts of the other;"

Evelyn also cites 41 Am.Jur.2d Husband and Wife § 436, as authority to support her contention. The relevant part reads:

"The mere relationship of husband and wife imposes no liability on the wife for the husband's torts. A wife is liable for the torts of her husband only on the basis of her participation therein, either actively or by express or implied instigation, authorization or ratification. She is not rendered liable for the husband's tort by her mere knowledge of, presence during, or failure to object to or prevent its commission.

"Generally, no liability is imposed on a wife for the torts of her husband by the mere fact that they were committed in connection with, or with reference to, property of which she is the owner, though she may be held liable for such torts where he commits them in the course of his agency for her, where she accepts and retains the benefits thereof, or where she knows of and acquiesces in the tortious acts. . . ." 41 Am. Jur.2d Husband and Wife § 436.

Finally, she refers us to *Schlichenmayer v. Luithle*, 221 N.W.2d 77 (N.D.1974), in support of her contention.

In *Schlichenmayer* a creditor who had sold cattle to a husband in return for a worthless check and alleged that the husband had used the proceeds from the sale of the cattle to make payments on property held in joint tenancy with his wife brought an action against the wife after the husband's death. The creditor asserted several theories under which the wife might be held liable including that she was involved in a fraud, responsible for her husband's fraud, liable as a partner of her husband, and unjustly enriched. The husband and wife were joint owners of a farm which the husband managed although the wife did assist some in the farming operations. We held that the creditor could not reach the wife's property under any of those theories.

Bauer contends that *Schlichenmayer* is distinguishable from this case in that the evidence in this case establishes that the gravel hauling project was for the benefit of the farm owned jointly by Evelyn and Ray Graner. However, in *Schlichenmayer* the cattle purchased were also for the benefit of the farm jointly owned by the husband and wife, and a part of the proceeds of the husband's sale of the cattle was used to pay for the jointly owned property.

Thus, in *Schlichenmayer*, the act of the husband was as much, if not more, of a benefit to the jointly owned property as the act of Ray Graner in this case.

Bauer also cites *Bush v. Kramer*, 185 Neb. 1, 173 N.W.2d 367 (1969), where the Nebraska court upheld the right of the plaintiff to impose a lien on the wife's property for the care of cattle after the death of the husband. That case is clearly distinguishable from this case, however, in that in *Bush* the wife took a very active part in the agreement involved.

The trial court, in its findings of fact, said:

"II.

"That defendants Ray Graner and Evelyn Graner are husband and wife and that the actions engaged in by Ray Graner at the time when said gravel pile was created and left on the public road were designed to benefit the defendant Evelyn Graner's interest and ownership in their farming operations and property."

In its conclusions of law, the trial court said:

"IV.

"That defendant Ray Graner acted as agent for defendant Evelyn Graner and that the negligence of Ray Graner is charged to defendant Evelyn Graner."

The trial court thus held Evelyn liable for the negligence of her husband under the theory that he was acting as her agent at the time that the negligent act was committed.

However, a marital relationship alone does not constitute a husband an agent of his wife. *Wilkinson v. Stevison*, 514 S.W.2d 895 (Tex.1974); *Lewis v. Citizens Agency of Madelia, Inc.*, 306 Minn. 194, 235 N.W.2d 831 (1975); *Wohlmuther v. Mt. Airy Plumbing & Heating, Inc.*, 244 Md. 321, 223 A.2d 562 (1966); *Sowers v. Birkhead*, 108 Ohio App. 507, 157 N.E.2d 459 (1958). Neither do we believe that joint ownership of a farm necessarily makes one spouse the agent of the other spouse in the commission of a tort. In *Schlichenmayer v. Luithle, supra*, we said:

"We find nothing in the facts summarized above to indicate the existence of a partnership, either actual or ostensible. The indications are that the plaintiff dealt with the husband in his individual capacity. There is no reliance shown on the existence of a partnership with the wife, nor is there any proof that such a partnership existed. Instead, the facts indicate nothing but the usual husband-and-wife cooperation in a farming enterprise in the name of the husband, where the wife took little or no part in the management of the farm and the business was done by the husband." 221 N.W.2d at 82.

We believe that it also follows that a husband is not automatically the agent of a wife in the commission of a tort just because they are joint owners of a farm.

In this case, there is no evidence tending to show an agency relationship existed between Evelyn and Ray Graner other than the fact that the Graners were joint owners of the farm and were husband and wife. The only testimony concerning the operation of the farm was by Ray Graner, who testified that he ran the farming operation. Furthermore, there is no evidence connecting Evelyn with the gravel hauling operation other than her notifying her husband that Randy had called and said the truck had broken down. We therefore hold that there was no evidence brought out at the trial to support the finding of the district court that Ray was acting as the agent of Evelyn when the negligent act was committed.

Absent this agency relationship or evidence of any other ground upon which to hold Evelyn liable for the negligence of her husband, we must reverse the trial court's judgment against Evelyn Graner. *See also Sowers v. Birkhead, supra*. The judgment of the court is reversed in this respect only and the case is remanded for disposition not inconsistent with this opinion.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.