# NORBERT A. GREIGER AND OTHERS v. WILLIAM W. PYE AND ANOTHER.[1]

April 4, 1941.

No. 32,724.

[1]Reported in 297 N. W. 173.

*William W. Pye, pro se.*
*Kopple Hallock* and *Moonan & Moonan,* for respondents.

JULIUS J. OLSON, JUSTICE.

In an action to determine adverse claims to certain real estate in Rice county, the court made findings that plaintiffs and defendant Pye are the owners in fee of the property, an undivided one-half belonging to plaintiffs, the remaining half to Mr. Pye. Pye's blended motion for amended findings or new trial was denied, and he appeals.

The facts may be thus summarized: In October, 1934, Pye recovered a personal judgment against his codefendant, Amanda L. Greiger, for some $3,000, duly entered and docketed in that county. On March 26, 1938, Wilhelmine Sprain and defendant Amanda L. Greiger became the owners of the premises here in question as joint tenants, subject to the life estate of Wilhelmine, who had come into such estate theretofore as the surviving spouse of the original owner. On April 6 Mrs. Greiger and husband conveyed all interests in the property to Wilhelmine. On the next day Wilhelmine conveyed the property to plaintiffs, subject only to her life estate. All these conveyances, said the court, "appear to have been made in good faith and for a valuable consideration." Next, on May 7 (as found by the court) or April 29 (as shown by the death certificate), Wilhelmine Sprain died, thus eliminating her life estate. On March 30, while Pye's judgment was in full force and effect, an execution was issued thereon resulting in an execution sale on July 2 to Mr. Pye. No redemption was made.

Mr. Pye's position is thus stated:

"Under the statute defendant's [Pye's] judgment became a lien on all the right, title, and interest in the real estate and this included a potential right to an estate in fee if Mrs. Greiger survived her co-tenant. At the time of the execution sale, due to Mrs. Sprain's death, this potential right had become an absolute fee title."

Therefore, so it is said, his title is one in fee of the whole thereof.

The court was of opinion, as stated in its memorandum, that "the judgment against the joint tenant binds the transferee to the extent of the interest conveyed by such judgment debtor. Before the conveyance by Mrs. Greiger, the rights of the joint tenants in the remainder were equal and reciprocal. By her conveyance the joint estate was severed, so her conveyance was in effect a conveyance by a tenant in common of a one-half interest in the remainder and subject only to the life estate of Mrs. Sprain, who died a month later thereby wiping out the life estate. By the execution sale, the defendant Pye became the owner of the one-half interest so conveyed by Mrs. Greiger to her mother. Pye ever since has been the owner of that undivided half interest and no more. I cannot understand on what theory the defendant. can claim that Mrs. Greiger retained any right or interest in the premises after her conveyance to her mother. The right of a joint tenant to transfer his interest in an estate is, I think, unquestioned."

The correctness of that view is the problem presented here.

■ That the general rule is as stated by the court cannot be doubted. It is thus stated in Annotation, 129 A. L. R. 814, Joint Tenancy, II, *Conveyance:*

"The courts are virtually unanimous in agreeing that a joint tenant may, at his pleasure, dispose of his share and convey it to a stranger, and that such conveyance will result in a severance or termination of the joint tenancy."

The cases are there cited and many of them annotated, so citation need not be repeated here. The rule is also stated in 33 C. J., Joint Tenancy, p. 907 [§ 10] F, and cases cited, and 3 Dunnell, Minn. Dig. (2 ed.) § 4952. That was also the view we adopted and applied in Papke v. Pearson, 203 Minn. 130, 280 N. W. 183, 185, where (under subd. 3 of the opinion, 203 Minn. 133 to 136, 280 N. W. 184-186) the problem was discussed and determined. There the trial court had found (203 Minn. 132, 280 N. W. 184) "that the parties intended to create a joint tenancy but that through mistake the plaintiff * * * conveyed an undivided one-half of the property so as to make the parties tenants in common instead of joint tenants." We said, as the reason for holding the trial court in error (*Id.* 135-136):

"A joint tenancy was not only inappropriate to effect but would have defeated the intention of the parties by granting a vested estate *in praesenti* instead of a contingent estate *in futuro,* and by incidents thereof which would have enabled Miss Tillman [the grantee] to defeat the survivorship. Any one of the [joint] tenants can destroy the other's right of survivorship by conveyance to a third person. * * * 'In general it is advantageous for the joint-tenants to dissolve the jointure; * * *' Plaintiff did not intend to place it in the power of Miss Tillman to defeat the survivorship and change the nature of the estate granted. Where the intention of the parties is to create an estate by survivorship at all events, a joint tenancy does not effectuate that intention. * * *

"Since the only intention of the parties was to create a contingent future estate in fee simple in Miss Tillman by way of survivorship, the deed should have been drawn to express only that intention. By a joint tenancy other incidents would have been introduced which would have enabled the grantee, Miss Tillman, to destroy that estate and defeat the intention of the parties. We therefore hold that the intention was to create only a contingent future estate in fee and not a joint tenancy."

■ It may well be, as contended by plaintiffs, that Mrs. Greiger never became a joint tenant with her mother, Wilhelmine. They urge in support thereof that joint tenants must have one and the same interest; that the interests must accrue by one and the same conveyance; must commence at one and the same time; and must be held by one and the same undivided possession; in other words, there are four unities required, namely, unity of interest, title, time, and possession. Therefore, so they urge, the unity of possession is lacking since the life estate was at all times in Wilhelmine and as such destroyed the right of joint possession. They cite 14 Am. Jur., Cotenancy, § 7, and cases under notes. In the text of that section it is said: "If any one of these elements is lacking, the estate will not be one in joint tenancy."

■ For the sake of argument, let it be conceded that plaintiffs are wrong in this contention, yet the fact remains that if there was a severance brought about by Mrs. Greiger's conveyance to Wilhelmine, obviously the result would be the same. So treating the situation, we think there can be no doubt that the deed mentioned effectuated that very purpose. Grant that Mrs. Greiger was a joint tenant, that did not lessen her power to surrender whatever right she had. Her grantee was her cotenant, her mother. No doubt Wilhelmine could have done the same thing in respect to conveying her interest, life estate and all, to Mrs. Greiger. In either event, the grantor's right would be gone, and the grantee would take whatever the grantor had to convey.

■ Nor can there be any doubt that joint tenants by their mutual agreement may sever their joint tenancies. That result necessarily follows since one tenant may, even without the consent of his cotenant, sever the estate. Annotation, 129 A. L. R. 817, VII, *Agreements effecting a severance.* Such was the conclusion reached in McDonald v. Morley, 15 Cal. (2d) 409, 101 P. (2d) 690, 129 A. L. R. 810, where joint tenants (husband and wife) were held to have expressly rejected their right of survivorship in joint property by agreeing that, in the event of the death of either, de-.

cedent's share should become the property of their daughter. The court considered that agreement so inconsistent with a joint tenancy estate as to terminate it, leaving the former joint tenants as tenants in common with separate descendible estates in what had been theirs as joint tenants.

■ The case upon which Mr. Pye principally and justifiably relies is Jones v. Snyder, 218 Mich. 446, 188 N. W. 505, which holds that where there is a conveyance granting a simple joint tenancy between the grantees, one of such joint tenants can alienate his joint interest; but that where, as in that case, the grant was to four grantees as joint tenants and to their heirs and assigns, and to the survivor of them and to the heirs and assigns of the survivor, the grantees took only a joint tenancy for life, with a remainder in fee to the survivor; hence that a conveyance by one of the grantees of his interest gave no right or interest in the property after the death of that grantee. That holding does not seem to accord with the decisions in other jurisdictions, as will be seen by an examination of them as annotated in 129 A. L. R. 813, *et seq.* Furthermore, that case is of doubtful value here, since by Mrs. Greiger's conveyance to her mother the entire fee thereby became vested in her. If all the grantees in the Snyder case had conveyed to a third party, or three of them had joined in a conveyance to the fourth, it would seem that such a grantee would take a complete fee to the property since the grant was to them, their heirs and assigns. If this were not so, obviously there would be a time during which complete alienation could not take place, thereby resulting in a violation of the provisions of 2 Mason Minn. St. 1927, § 8044. In other words, the survivorship here would have to be construed as of the "indestructible" type, and, as we said in Papke v. Pearson, 203 Minn. 130, 135, 280 N. W. 183, 185, "where the intention of the parties is to create an estate by survivorship *at all events, a joint tenancy does not effectuate that intention."* (Italics supplied.)

■ When the execution sale was held there had been accomplished a complete severance of the joint tenancy. As such, the

Pye judgment could only reach the interest of Mrs. Greiger as a tenant in common with her mother.

Order affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

