RICHARD A. SNYDER v. MAVIS A. SNYDER.

212 N. W. 2d 869.

November 23, 1973—No. 43691.

*Dingle, Suk & Zeigler* and *Richard Zeigler,* for appellant.
*Tuveson & Goldman* and *Bob A. Goldman,* for respondent.
*Raymond C. Ploetz* and *Robert H. Meier,* amici curiae.

TODD, JUSTICE.

Plaintiff, Richard A. Snyder, appeals from an amended judgment and decree entered 15 months after the original decree of divorce. The amended decree awarded defendant, Mavis A. Snyder, the homestead of the parties and required plaintiff to pay medical expenses incurred by defendant from the time of the original decree, to pay all future medical expenses of the defendant, and to pay increased monthly alimony. We reverse as to the award of the homestead and the requirement that plaintiff pay the past medical expenses of defendant and remand this matter to the trial court for further consideration.

Plaintiff and defendant were divorced by a judgment and decree entered August 17, 1970. Pursuant to that decree, plaintiff husband was granted custody of the minor child of the parties, the personal property and household goods in his possession, a 1969 Chevrolet automobile, a boat, and certain shares of common stock. Defendant wife was awarded the household goods and personal property in her possession, a 1965 Chevrolet automobile, and $350 per month alimony. In addition, the original decree provided as follows:

"That the defendant be and she hereby is awarded the possession of the homestead located at 600 Thirteenth Avenue Southeast, Austin, Minnesota * * * until such time as it is sold. At the time said homestead is sold the net equity thereof shall be divided equally between the Plaintiff and the Defendant."

The decree further provided that plaintiff should make the mortgage payments and pay the real estate taxes, defendant pay the utilities, and the maintenance and upkeep be divided equally between the parties.

On December 3, 1971, the trial court entered an amended judgment and decree with reference to the homestead property which provided as follows:

"Paragraph VI of the Judgment and Decree dated August 17, 1970, is hereby amended in its entirety to read as follows:

"Defendant be and she hereby is awarded possession and absolute ownership of the homestead * * *. Defendant shall pay in the future all expenses, mortgage payments, real estate taxes, utilities, and any other payments in connection with said homestead. Plaintiff will forthwith quitclaim to the Defendant title to said property."

In addition, the amended decree increased the alimony payments to $400 per month and required plaintiff to pay medical expenses incurred by defendant in the amount of $1,340.35. These expenses arose from surgery necessitated by an illness not in existence or known by either party at the time of the original decree. The court further ordered that plaintiff should be responsible for all medical expenses of defendant in the future and recommended that plaintiff "provide a health insurance policy in this regard in his good discretion."[1]

The real estate of the parties, subject of the court's actions in both the original and amended decrees, was held in joint tenancy. This court has never directly ruled on the effect of a divorce decree on jointly owned property, although we have expressed several times our concern over the continuance of joint or undivided interests in property following a divorce decree. Johnson v. Johnson, 284 Minn. 181, 169 N. W. 2d 595 (1969); Wos v. Wos, 291 Minn. 404, 191 N. W. 2d 829 (1971); Leutgers v. Kasten, 295 Minn. 545, 204 N. W. 2d 210 (1973).

Historically, joint tenancy arose out of the English common law as one of the means of preserving the right of survivorship and, along with tenancy by the entirety, existed at the time of the founding of our country. Early legislative history in Minnesota discloses an intent, even before the granting of statehood, to limit the use of these common-law estates in real property.

---

[1] A further part of the amended decree referring to back alimony, support, and expenses for repairs of the homestead is not involved in this appeal.

Tenancies by the entirety were abolished[2] and estates in joint tenancy were permitted only if there were an express declaration in derogation of tenancies in common.[3] The present statute, Minn. St. 500.19, subd. 2, provides in part as follows:

"All grants and devises of lands, made to two or more persons, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."

Thus, we have an early legislative history showing a preference for tenancy in common with its vesting of undivided interests as opposed to joint tenancy with its transfer of the estate of a tenant upon his death to the surviving joint tenant or tenants. In addition, it is historically true that at the time of this early legislative action divorce was not a common occurrence. This accounts for the lack of specific legislation at that time on the effect of divorce on these estates but obviously does not account for the lack of such legislative action at present.

In Gau v. Hyland, 230 Minn. 235, 238, 41 N. W. 2d 444, 447 (1950), we had occasion to comment on the nature of an estate in joint tenancy. We there said:

"The language of the statute must be construed in the light of well-settled rules governing joint tenancy, the severance thereof, liens upon the interest of one of the joint tenants, and the like.

"A joint tenancy is characterized by four unities, viz.,—unity of interest, unity of title, unity of time, and unity of possession. If all these continued unsevered, the survivor of the joint tenants becomes the sole owner upon the death of the others. If, however, any one of the unities is destroyed, the jointure is severed, with the consequence that what was a joint tenancy becomes a tenancy in common. Greiger v. Pye, 210 Minn. 71, 297 N. W. 173 [1941]; Papke v. Pearson, 203 Minn. 130, 280 N. W. 183 [1938]. The jointure may be severed either *voluntarily*, as by a conveyance

---

[2] See, Wilson v. Wilson, 43 Minn. 398, 45 N. W. 710 (1890).

[3] Rev. Stat. (Terr.) 1851, c. 43, § 44.

of the interest of a joint tenant (Greiger v. Pye and Papke v. Pearson, *supra*); or by a partition by the joint tenants (14 Am. Jur., Cotenancy, § 14); or *involuntarily*, as by an execution sale of the interest of a tenant (14 Am. Jur., Cotenancy, § 14, *supra*).

"In order to effect a severance of the jointure, the effect of the act or transaction, whether it is voluntary or involuntary insofar as the joint tenant is concerned, must be to divest him of his estate in joint tenancy."

Prior to 1951, our case law had held that where the issue of the right to real estate is litigated in a divorce action, a judgment and decree is conclusive and cannot be modified after the time for appeal has expired. In re Petition of Wipper, 176 Minn. 206, 222 N. W. 922 (1929); Anich v. Anich, 217 Minn. 259, 14 N. W. 2d 289 (1944). In 1951 the common-law rule was made more specific by L. 1951, c. 551, now codified as Minn. St. 518.64:

"* * * Except for an award of the right of occupancy of the homestead, all divisions of real and personal property provided by Sections 5 and 6 of this act [Minn. St. 518.58 and 518.59] shall be final, and subject only to the power of the court to impose a lien or charge thereon at any time while such property, or subsequently acquired property, is owned by the parties or either of them, for the payment of alimony or support money, or to sequester the property as is provided by Section 518.24, Minnesota Statutes of 1949."

This section is determinative of this case if there had been a "division" of real property in the court's order and decree of August 17, 1970. The use of the word "division" in this section is somewhat misleading. Clarification can be found in the language of Minn. St. 518.58, referred to in this section. Section 518.58 provides:

"Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in

the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

This section charges the court with the responsibility for making a just and equitable "disposition" of the property of the parties, and it is obvious that the court could make a disposition of specific real property without dividing it. Therefore, we must consider the language of the decree in determining what the court did here.

The original decree made complete disposition of the parties' rights in the homestead without reservation. Defendant was granted the exclusive right to possession and a one-half interest in the net equity at the time of sale. She was charged by the decree with the responsibility of paying the utilities and one-half of the expense of maintenance and upkeep. Plaintiff's possessory right was completely terminated. He was charged with the obligation of the mortgage and property tax payments and one-half of the expenses of maintenance and upkeep, and was granted a one-half interest in the net equity at the time of sale. This was a disposition within the meaning of § 518.58 and was final under § 518.64.

In Johnson v. Johnson, 284 Minn. 181, 184, 169 N. W. 2d 595, 597, we stated:

"Although we have approved an award of an undivided interest in the property acquired during coverture, we have done so only in those rare cases where special circumstances not only justified but, in fact, virtually compelled the trial court to make such a division of the property."

In that case, we remanded the matter to the trial court, directing it to divide the jointly held property.

In Wos v. Wos, 291 Minn. 404, 406, 191 N. W. 2d 829, 830, we said:

"The thrust of our more recent decisions touching upon the issue before us, however, is to severely limit the continuation of undivided interests in property acquired by divorced parties during coverture. With respect to such property the court shall, wherever possible, determine the issue of division of the property with finality, as contemplated by Minn. St. 518.64."

Finally, more recently in Leutgers v. Kasten, 295 Minn. 545, 547, 204 N. W. 2d 210, 212, we said:

"* * * We are compelled to assume that counsel would thus be aware of the policy consideration embodied in Minn. St. 500.19, subd. 2, disfavoring the establishment of estates in joint tenancy in this jurisdiction as well as the necessity in divorce proceedings of a final determination of the issue of property division."

We there held that a decree awarding defendant wife "one-half interest in the real estate" effectuated a severance of the divorced parties' previous joint tenancy ownership of the real estate.

Logically, we now only need take the final step of integrating the prohibition against joint tenancy contained in § 500.19, subd. 2, with the provisions in § 518.64 giving finality to property divisions made under §§ 518.58 and 518.59. We construe the language of the original decree of August 17, 1970, to be a final disposition of the real property of the parties and further hold that in a divorce proceeding where there is a final disposition of jointly held property, such a decree effectuates a severance of the joint tenancy unless the decree specifically declares that the parties shall continue to hold the property as joint tenants instead of as tenants in common. Such a result is consistent with legislative intent as expressed in § 500.19, subd. 2. Further, we have recognized the finality of divorce decrees as an effective

means of transferring title to real estate.[4] Accordingly, it is ordered that the provision of the amended decree relative to the homestead be set aside and the original provision be reinstated with title to the real estate thus vested in the parties as tenants in common.

■ Next we consider that portion of the amended judgment and decree which ordered plaintiff to pay certain medical expenses incurred by the defendant. The original judgment and decree made no specific reference to medical payments. The parties are in some disagreement as to whether the original alimony allowance took into consideration medical expenses.

This question again raises the issue of finality of divorce decrees. In Larkin v. Larkin, 261 Minn. 414, 113 N. W. 2d 75 (1962), we had occasion to consider an order denying an application for reimbursement to the wife, who had custody of the minor children, for certain hospital and doctor bills paid by her in behalf of one of the children. Although holding that the issue was not directly before the court, we did indicate that the general rule, in the case of support payments, is that in the absence of exceptional circumstances an order determining the obligation of support, applied retroactively, is either beyond the power of the court, or the court should refuse to make the order on the grounds of fairness. This is the position taken by the majority of jurisdictions which have considered the question.[5] We have indicated a reluctance to disturb the finality of a divorce decree absent fraud or mutual mistake, which issues are not present in this appeal.

In determining this question, we are mindful that both parties were represented by able counsel at trial; that several proposed findings of fact and conclusions of law were submitted; that the parties' interests were vigorously argued; and that the court

---

[4] See, for example, Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. 2d 652 (1965), and Anich v. Anich, 217 Minn. 259, 14 N. W. 2d 289 (1944).

[5] 24 Am. Jur. 2d, Divorce and Separation, § 663. See, also, Annotation, 6 A. L. R. 2d 1277, § 25, and cases cited therein.

made an adequate allowance of alimony to the defendant based on the financial condition of the plaintiff at the time of the divorce. Under these circumstances, we hold that the court was without power to retroactively order payment of medical expenses incurred by the wife subsequent to divorce, even though the medical problems which occasioned the expenses were not known at the time of the original decree. Although the decree made no provision for payment of medical expenses by the husband, the wife was left with adequate funds to procure hospitalization insurance, or, in the alternative, to appeal the court's original judgment and decree in this regard.

It is obvious that this holding seeks to balance the concern of this court over unforeseen medical expenses of the wife with the need for finality of divorce decrees required to enable the divorced husband to make some reasonable plans for the future based on economic obligations imposed upon him by the decree of divorce. Further, as discussed hereafter, there are adequate ways of protecting the divorced wife from catastrophic medical expenses.

In considering that portion of the amended decree which ordered the husband to pay future medical expenses of the wife, we find the record inadequate to make a final determination as to whether the court could properly consider this issue. If the issue had been determined in the original proceedings, as contended by plaintiff, and such future medical expenses were an item included in the allowance of alimony, the need for finality in divorce proceedings, heretofore expressed, would preclude consideration of this issue at a later date by the trial court, absent the question of increased costs of such protection. We therefore remand this issue to the trial court to make specific findings regarding the inclusion of medical expenses in the original allowance of alimony. Since future medical costs would properly have been a matter of consideration at the time of the divorce, in the event the trial court finds that they were not included in the

original allowance, it may proceed to make such a determination as to prospective medical expenses of the spouse.

However, we strongly suggest that the open-end provision provided in the amended decree does little toward achieving finality and seems susceptible to promotion of continued strife between the parties. It is suggested that such an order would be better framed by requiring the husband to procure hospitalization insurance and thus to have some reasonable assurance of fixed liability. In those rare situations where the spouse is uninsurable, the court may consider other alternatives. Again, the objective to be sought is finality and a reasonable assurance to the husband of his economic obligations.

Finally, plaintiff challenges the order of the court increasing the award of alimony from $350 per month to $400 per month. Defendant bases her claim for this increase on a marked change in the economic condition of the plaintiff and on her income tax liability for the alimony payments made to her. As we pointed out in Kaiser v. Kaiser, 290 Minn. 173, 186 N. W. 2d 678 (1971), to justify an increase in alimony there must be a clear showing of an adverse change in the circumstances of the party seeking the adjustment. We indicated that increased earnings of the husband, standing alone, absent fraud or a showing of inability to pay fair alimony existing at the time of the original decree, could not be a basis for increase in alimony. We quoted with approval the statement in Clark, Domestic Relations, § 14.9, p. 460 (290 Minn. 184, 186 N. W. 2d 685):

"* * * The purpose of alimony is to care for the wife's needs after divorce, not to provide her with a lifetime profit-sharing plan."

Defendant claims she was unaware of the income tax consequences of periodic alimony. The fact that she was represented by able counsel at the time of the original decree reduces her claim to one of very little weight. There is nothing in the present record which would justify the increase in alimony, except the question of medical payments, which we have remanded for con-

sideration. At that time, the trial court may take additional evidence regarding material change in circumstances and make its appropriate order consistent with this opinion.

No costs or disbursements are allowed to either party.

Reversed in part and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the submission, took no part in the consideration or decision of this case.