**Bruno RENZ, Plaintiff and Appellee,**

v.

**Mary Lou RENZ, Evelyn Wuttke, and Emil Wuttke, Defendants and Appellants.**

**Civ. No. 9327.**

Supreme Court of North Dakota.

Aug. 18, 1977.

Joseph P. Stevens, Minot, for plaintiff and appellee.

A. S. Benson, Benson & Schell, Bottineau, for defendants and appellants.

VOGEL, Justice.

This case involves the question of whether a stipulation and judgment in a divorce action providing for the sale of property

held in joint tenancy and the division of the proceeds severs the joint tenancy even though no sale had been made prior to the death of one of the parties eleven years later. The trial court held that there was a severance, and we affirm its judgment.

Two parcels of land are involved. One was held in joint tenancy by Ernest Renz and Mary Lou Renz, who were divorced in 1962, and the other was held, also in joint tenancy, by Ernest Renz, Mary Lou Renz, Evelyn Wuttke, and Emil Wuttke. The Wuttkes are the parents of Mary Lou Renz.

Ernest Renz died on August 17, 1973. At the time of the divorce, eleven years earlier, he and his wife entered into a stipulation, drawn by her attorney but almost exactly in the words of a memorandum written by Ernest, that the property jointly held by Ernest and Mary Lou Renz was "to be divided equally, less any encumbrance that is against said property as soon as property is sold." It was agreed that the property held by the four persons in joint tenancy "shall be divided so that each party on the deed shall receive one-fourth of the net selling price." The stipulation was approved by the court and made a part of the judgment.

Obviously, the parties contemplated a sale and division of the proceeds within a reasonable time. Instead, they apparently got along with each other very well indeed after the divorce and never got around to selling the property. Now that one of them has died, his sole heir, Bruno Renz, a brother, claims that the property-settlement agreement and judgment severed the joint tenancies and created tenancies in common as between Ernest Renz and Mary Lou Renz as to the one tract, and as between the four owners as to the other tract, and he claims title to the shares belonging to Ernest Renz. Mary Lou Renz, the former wife, and the other joint tenants as to the second tract, assert that the joint tenancies continued until the death of Ernest Renz, whereupon they, as surviving joint tenants, became the owners of the interest of the deceased joint tenant. See *Cranston v. Winters*, 238 N.W.2d 647 (N.D.1976), and

*Schlichenmayer v. Luithle*, 221 N.W.2d 77 (N.D.1974).

The trial court held that the property-settlement agreement and the judgment severed the joint tenancies, creating tenancies in common, and that Bruno Renz, as heir, inherited the interests of Ernest Renz. We agree.

A few similar cases have been litigated in other jurisdictions, and the courts have held that either the divorce decree or the stipulation of the parties for property settlement prior to the decree, or both, if they provide for a division or sale (even if not completed prior to the death of one party), have the effect of severing the joint tenancy and creating a tenancy in common. *Leutgers v. Kasten*, 295 Minn. 545, 204 N.W.2d 210 (1973); *Snyder v. Snyder*, 298 Minn. 43, 212 N.W.2d 869 (1973); *Carson v. Ellis*, 186 Kan. 112, 348 P.2d 807 (1960); *McDonald v. Morley*, 15 Cal.2d 409, 101 P.2d 690 (1940).

These cases are consistent with others which hold that property jointly held, which is not ordered to be divided in a divorce decree, continues to be held jointly by the divorced parties after the divorce. *Nichols v. Nichols*, 43 Wis.2d 346, 168 N.W.2d 876 (1969); *Witzel v. Witzel*, 368 P.2d 103 (Wyo. 1963); *Gwin v. Camp*, 25 Cal.2d 10, 76 P.2d 160 (1938).

While we agree with the result in the *Leutgers, Snyder, Carson,* and *McDonald* cases, *supra,* and perhaps could end our opinion with that statement, the fact is that the opinions in those cases expound reasons for the conclusions reached in them which are not historically accurate or logically persuasive in this State.

■ For example, *Leutgers* and *Snyder, supra,* refer to a historic policy in Minnesota of the disfavoring of joint tenancies. This conclusion as to public policy is based on a Minnesota statute (M.S.A. § 500.19, subd. 2) providing that all grants and devises to two or more persons "shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy," and upon the abolition of the common-law estate by the entirety. In

North Dakota estates by the entirety have never been recognized. See *Schimke v. Karlstad*, 87 S.D. 349, 208 N.W.2d 710 (1973), in which our sister Supreme Court of South Dakota pointed out that such estates did not exist in Dakota Territory, from which both States were formed.

We have a statute which defines "joint tenancy interest" as

".   .   . one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants." Sec. 47–02–06, N.D.C.C.

"Interest [tenancy] in common" is defined in Section 47–02–08, N.D.C.C., as

"An interest in common is one owned by several persons not in joint ownership or partnership. Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership for partnership purposes, or unless declared in its creation to be a joint tenancy."

■ Thus we, too, have a statutory declaration that a conveyance to two or more persons will result in a tenancy in common unless the conveyance expressly declares the tenancy to be a joint tenancy. But we cannot in all honesty construe this statute to be an expression of hostility toward joint tenancy or an expression of public policy against joint tenancy. On the contrary, it appears to us that the statute simply represents a choice by the Legislature of a rule of construction which selects one of two possible interpretations of a provision otherwise ambiguous. We do not believe this creates a public policy against the interpretation not selected. Nor do we find any other expressions of hostility toward joint tenancy in our statutes or court decisions, even though many of our lawyers and judges think there should be such a hostility. On the contrary, North Dakota has legislated to avoid termination of joint tenancies in some ambiguous transactions, as evidenced by Section 47–19–54, N.D.C.C., adopted in 1963, which provides:

"Any contract for deed for the sale of real property held in joint tenancy shall not have the effect of dissolving the joint tenancy relationship of the vendors if such contract for deed is executed by all the joint tenants unless otherwise specifically provided in the instrument."

■ Again, some of the opinions of other States recite the four unities (interest, title, time, and possession) which the common law required in order to establish a joint tenancy, and hold that an agreement of the parties prior to divorce, or the divorce judgment, which dissolves one of the unities (usually that of possession), thereby transmutes the joint tenancy into a tenancy in common, since joint tenancy cannot exist without the existence of the four unities. See, for example, *Carson v. Ellis, supra*, and *Snyder v. Snyder, supra*. Such an argument is not convincing as to North Dakota, for although we have recited the Blackstonian doctrine of the four unities as a matter of history [*In re Estate of Paulson*, 219 N.W.2d 132 (N.D.1974)] and have otherwise quoted Blackstone on joint tenancies [*Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612 (N.D.1976)], we have never held that the four unities were required in order to establish a joint tenancy under our law. Nor should we so hold now, because joint tenancy is a creature of statute in this Code State and the statute, Section 47–02–06, quoted in part above, requires at the most two unities, title and perhaps time. As the Supreme Court of Wisconsin said, in *Nichols v. Nichols, supra*,

"The legislature by statutory enactment has eliminated at least some of the unities as a prerequisite to the creation of a joint tenancy." 168 N.W.2d at 878.

Again, some of the decisions rely on, or at least refer to, a supposed intention of legislatures to permanently divide the property of divorced persons, presumably so as to avoid further disputes between them. Such references may be found in *Leutgers v. Kasten, supra*; *Snyder v. Snyder, supra*; and *Carson v. Ellis, supra*. We find no such indication of legislative intention in this State. Our Legislature gives the courts the power to

" . . . make such equitable distribution of the real and personal property of the parties as may seem just and proper, . . . " Sec. 14–05–24, N.D.C.C.

We discern no hint of a direction that we should not allow divorced couples to continue to hold property jointly if it seems proper to them or equitable to the court for them to do so. Apparently other courts find no such directive in their statutes since, as we have indicated above, the courts deciding the *Nichols*, *Gwin*, and *Witzel* cases, *supra*, permitted the divorced joint tenants to continue their joint-tenancy status after divorce.

█ In spite of disavowing reliance on some of the bases for holdings made by other courts, we agree with the results reached in *Leutgers*, *Snyder*, *Carson*, and *McDonald*, *supra*. We do so on the single ground that the parties by their own acts have severed the joint-tenancy relationship between themselves, or that the court has done so. While this precise question has not been presented to this court before, we have had occasion to specify several ways in which joint tenancies may be terminated, voluntarily by the parties or involuntarily. In *Jamestown Terminal Elevator, Inc. v. Knopp*, we said:

"Severance of a joint tenancy interest in real property may be accomplished by partition. [Citations omitted.] Severance may be accomplished also by alienation. [Citations omitted.] Sale under execution upon a judgment lien will likewise sever the joint tenancy. [Citations omitted.]" 246 N.W.2d at 614.

In that case we held that a mere judgment lien, without execution, did not operate as a severance of the joint tenancy.

We hold that in this case the parties voluntarily severed the joint-tenancy relationship, and thereby created in themselves a tenancy in common.

We agree with that portion of the opinion in *Carson v. Ellis*, *supra*, which says:

"It has also been held that a joint tenancy may be terminated by a mutual agreement between the parties [citations], or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. [Citations omitted.]" 186 Kan. at 115, 348 P.2d at 810.

And we agree with the Minnesota Supreme Court when it said, in *Greiger v. Pye*, 210 Minn. 71, 75, 297 N.W. 173, 175 (1941), and reiterated in *Leutgers v. Kasten*, *supra*,

"Nor can there be any doubt that joint tenants by their mutual agreement may sever their joint tenancies. That result necessarily follows since one tenant may, even without the consent of his cotenant, sever the estate." 295 Minn. at 546, 204 N.W. at 211.

And so we hold, as the Minnesota court did in *Snyder v. Snyder*, *supra*, although we base our opinion on somewhat different reasons,

" . . . that in a divorce proceeding where there is a final disposition of jointly held property, such a decree effectuates a severance of the joint tenancy unless the decree specifically declares that the parties shall continue to hold the property as joint tenants instead of as tenants in common." 298 Minn. at 50, 212 N.W.2d at 874.

Affirmed.

ERICKSTAD, C. J., and VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.