*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0672**

In re the Marriage of:

Matthew John Miller, petitioner,
Respondent,

vs.

Jody Lynn Bichrt,
Appellant.

**Filed July 11, 2016
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Washington County District Court
File No. 82-FA-13-2971

Linda S.S. de Beer, de Beer & Associates, P.A., Lake Elmo, Minnesota (for respondent)

John A. Warchol, Warchol Law Offices, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

**UNPUBLISHED OPINION**

**SCHELLHAS**, Judge

On appeal from a marriage dissolution, appellant argues that the district court erred by not awarding her permanent spousal maintenance and in its determination of her reasonable monthly expenses. In his related appeal, respondent also challenges the court's

determination of appellant's reasonable monthly expenses. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Jody Bichrt, age 52, and respondent Matthew Miller, age 51, were married on March 25, 1992, and are the parents of a minor child. Bichrt has a college degree in applied mathematics and worked in the information-technology field during the first 12 years of the marriage, receiving her highest annual earnings of about $59,000 in 2003. She has been unemployed since 2004. Miller is employed as a director of research and development at Boston Scientific Inc., where he earned a base salary of nearly $200,000 in 2014. Every year since 2009, Miller has earned annual performance-incentive bonuses. From 2012 to 2014, Miller's bonuses averaged about $45,000. Miller also has received annual deferred-compensation awards of restricted stock and stock options.

Miller petitioned for dissolution of marriage on May 1, 2013. The parties agreed to joint legal and joint physical custody of their child with approximately equal parenting time. They also agreed to an equal division of their marital property, which exceeded $3.1 million in value, excluding the value of the unencumbered marital homestead. By agreement, Miller paid Bichrt temporary spousal maintenance of $8,450 per month during the pendency of the dissolution proceeding. The parties tried the issues of child support and spousal maintenance to the district court; the court awarded Bichrt child support and temporary spousal maintenance until June 30, 2022.

Both parties appeal from the court's award of spousal maintenance.

# DECISION

"The standard of review on appeal from a trial court's determination of a maintenance award is whether the trial court abused the wide discretion accorded to it." *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). A district court abuses its discretion regarding maintenance "by making findings unsupported by the evidence or by improperly applying the law." *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 & n.3 (Minn. 1997) (quotation omitted). "We apply a clearly erroneous standard of review to a district court's findings of fact concerning spousal maintenance." *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009). "[W]e apply a *de novo* standard of review to questions of law related to spousal maintenance." *Id.*

"Maintenance is defined by statute as 'an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other.'" *Lee v. Lee*, 775 N.W.2d 631, 635 (Minn. 2009) (quoting Minn. Stat. § 518.003, subd. 3a (2008)). "Minnesota Statutes § 518.552 . . . outlines the conditions and factors courts must consider before awarding maintenance." *Id.* "The maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors," including eight specified factors. Minn. Stat. § 518.552, subd. 2 (2014). "Each case must be decided on its own facts and no single statutory factor for determining the type or amount of maintenance is dispositive." *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn. 1984).

The district court found that Miller's earned income from all sources was $20,409 per month and that Bichrt is capable of full-time employment. The court also found that Bichrt would receive investment and earned income of $4,435 per month beginning July 1, 2016, and $5,301 per month beginning July 1, 2019. The court found Miller's reasonable monthly expenses to be $7,262 and Bichrt's reasonable monthly expenses to be $6,741. The court then found that Miller is self-supporting and that Bichrt is in need of spousal maintenance. The court awarded Bichrt temporary spousal maintenance as follows: $8,450 per month from April 1, 2015, through June 30, 2016; $5,000 per month from July 1, 2016, through June 30, 2019; and $3,000 per month from July 1, 2019, through June 30, 2022.

Bichrt argues that the court abused its discretion by not awarding her permanent spousal maintenance, and both parties challenge the court's finding of Bichrt's reasonable monthly expenses. Miller does not argue that he is incapable of paying the spousal maintenance awarded, and neither party challenges the district court's finding of Miller's reasonable monthly expenses.

***Duration of maintenance award***

The court stated that it "expect[ed] [Bichrt] will become fully self-supporting within six years" and awarded Bichrt temporary spousal maintenance through June 30, 2022. Bichrt argues that the district court abused its discretion by not awarding her permanent spousal maintenance. We agree. "Where there is some uncertainty as to the necessity of a permanent award, the court *shall* order a permanent award leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3 (2014) (emphasis added); *see* Minn. Stat. § 645.44, subd. 16 (2014) ("'Shall' is mandatory"). And the supreme court has noted

4

legislative history that indicates that "temporary maintenance should not be favored over permanent awards." *Nardini v. Nardini*, 414 N.W.2d 184, 197 n.10 (Minn. 1987).

In August 2014, Bichrt enrolled at a local college to earn an associate's degree in accounting, expecting to graduate in December 2015 and hoping to find a job as an accountant. The district court found that Bichrt will be capable of earning $3,724 per month ($21.50 per hour in a full-time position) by July 2019. The court also found that Bichrt needs $6,741 to meet her reasonable monthly expenses and that, as of July 1, 2019, she would receive a total of $5,301 per month in investment and earned income. The court did not address how Bichrt would meet the anticipated monthly shortfall of $1,440 without spousal maintenance from Miller after June 30, 2022.

Even if Bichrt achieves the income anticipated by the district court, her income likely will be insufficient to provide for her reasonable monthly expenses without spousal maintenance. And Bichrt's earning capacity is complicated by her history of mental-health and chemical-dependency issues, which are well documented in the record. The court's findings and the record evidence demonstrate uncertainty about the necessity of a permanent maintenance award. We therefore conclude that the court abused its discretion by not awarding Bichrt permanent spousal maintenance, "leaving its order open for later modification." Minn. Stat. § 518.552, subd. 3.

***Amount of maintenance***

"Spousal maintenance is awarded when a party shows sufficient, reasonable need." *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007) (citing *Snyder v. Snyder*, 298 Minn. 43, 53, 212 N.W.2d 869, 875 (1973)), *review denied* (Minn. Aug. 21, 2007). "The

concept of 'reasonable needs' is a malleable one, and will vary from case to case depending on the unique characteristics of the party seeking maintenance and the standard of living established during the marriage." *Lee*, 775 N.W.2d at 642. "[T]he support to which a divorced party is entitled is not simply that which will supply her with the bare necessities of life. Rather, the obligee can expect a sum that will keep with the circumstances and living standards of the parties at the time of the divorce." *Id.* (quotations and citation omitted). A court must balance the obligee's needs against the obligor's ability to pay. *See Erlandson*, 318 N.W.2d at 39−40 ("[A]lthough the statute lists seven factors, the issue is basically the financial needs of [the obligee] and her ability to meet those needs balanced against the financial condition of [the obligor].").

*Savings*

The district court excluded from Bichrt's reasonable monthly expenses her claim of $540 for retirement savings and $200 for other savings and investments, reasoning that "the Minnesota Supreme Court has held that savings amounts should be excluded when determining a spouse's reasonable needs" and citing *Sefkow v. Sefkow*, 427 N.W.2d 203, 216 (Minn. 1988). Bichrt challenges this exclusion.

*Sefkow* is a case with a tortured procedural history involving contested child custody, child support, and spousal maintenance, as well as remarriage by the spousal-maintenance obligee. 427 N.W.2d at 205–10. We do not read *Sefkow* to stand for the proposition that savings cannot be included when determining a spouse's reasonable monthly expenses. In *Kampf*, in which husband cited *Sefkow* in support of his challenge to the inclusion of savings in wife's reasonable monthly expenses, we stated:

[Husband]'s reliance on *Sefkow v. Sefkow*, 427 N.W.2d 203, 216 (Minn. 1988), is . . . misplaced. In *Sefkow*, the Minnesota Supreme Court reversed a maintenance award that included an amount for savings because the obligee failed to "show that her living expenses exceeded her spendable income." *Id.* [Husband] does not dispute that [wife]'s expenses exceed her spendable income, and therefore *Sefkow* does not apply.

Here, the record shows that the parties accumulated substantial savings, investment, and retirement accounts in excess of $340,000 throughout their 28-year marriage. On this record, we hold that the parties' savings and retirement planning were an integral part of their standard of living during the marriage. Accordingly, the district court did not abuse its discretion by including savings expenses in [wife]'s reasonable monthly expenses. Further, because the record supports the amount of the savings expenses allowed by the district court, the figure of $693 per month is not clearly erroneous.

732 N.W.2d at 634.

Similar to *Kampf*, the record in this case demonstrates that savings and retirement planning were an important part of the parties' marital lifestyle during their 21-year marriage. Miller testified that he and Bichrt typically put any unspent income into bank accounts or "other investments." In addition, during the majority of the marriage, Miller maximized his salary contributions to his 401(k). At the date of valuation of the marital assets, the parties had more than $1.8 million in various savings, retirement, and investment accounts. We conclude that the district court abused its discretion by excluding savings from Bichrt's reasonable monthly expenses. On remand, the court should include in Bichrt's reasonable monthly expenses a savings amount that is in keeping with the parties' marital standard of living.

7

*Cigarettes*

Bichrt challenges the district court's exclusion from her reasonable monthly expenses her claim of $215 for cigarettes. Bichrt testified that she has smoked since high school and that she smokes about one pack of cigarettes per day at a daily cost of about eight dollars. Miller acknowledged that Bichrt has smoked cigarettes as long as he has known her and throughout the parties' marriage. But he contends that, because Bichrt was attempting to quit smoking, had been advised by her physician to quit smoking, and had agreed to be prohibited from smoking in her home and within 30 feet of the parties' child, her claimed expense for cigarettes was unreasonable. The court excluded the cigarette expense because "cigarettes are not a basic necessity."

Although we note that "the support to which a divorced party is entitled is not simply that which will supply her with the bare necessities of life." *Lee*, 775 N.W.2d at 642 (quotation omitted), we conclude that the district court did not abuse its broad discretion in excluding Bichrt's cigarette expense of $215 per month.

*Automobile-loan payment*

Bichrt also challenges the district court's exclusion from her reasonable monthly expenses her claimed expense of $511 for a proposed automobile-loan payment, reasoning:

> [Bichrt]'s budget includes an auto loan payment of $511.00. This item is speculative and cannot be included in [Bichrt]'s budget. [Bichrt] testified that she would like to purchase a new vehicle, but has not yet done so. Given the parties' lifestyle of partially financing new vehicles, the Court finds that an auto loan payment would be a reasonable expense for [Bichrt], but because she does not yet have this expense, it shall be excluded from her budget.

8

We conclude that the district court did not abuse its broad discretion in excluding Bichrt's proposed automobile-loan payment of $511 per month. *Cf. Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989) (concluding that district court erred by including mortgage payment in wife's monthly expenses when record contained no evidence "concerning when or whether" wife would begin incurring mortgage expense).

*Mortgage payment*

Bichrt's proposed budget included a monthly housing expense of $1,430 for "[r]epayment of funds borrowed" at 3.5% interest for 15 years. The district court allowed the expense, finding that "it is reasonable that [Bichrt]'s budget include a mortgage-style loan payment of $1,430." In his related appeal, Miller challenges the court's inclusion of this expense in Bichrt's reasonable monthly expenses.

Bichrt received more than $1.1 million in marital property, including about $700,000 in liquid, non-retirement funds.[1] When she purchased a home for $372,000 in July 2014, she paid for the new home with about $200,000 in cash from her marital-property award and about $180,000 that she had received from her family. Bichrt testified that she had been unable to obtain financing to purchase the home and that she wanted to repay the funds that she had received from her family. She testified that, during the marriage, the parties typically obtained mortgages to purchase homes and paid off mortgages before they matured by making additional payments when they had extra cash, such as Miller's bonuses. Miller similarly testified that the parties initially obtained

---

[1] After Bichrt purchased a new home, she also received half of the proceeds from the sale of the marital homestead, which was unencumbered and apparently sold for $599,000.

9

mortgages when purchasing homes during their marriage. When asked about the marital habit regarding the use of mortgages, Miller testified:

> Our habit when it came to mortgages when we had to, was to seek the shorter-term loans such that we could get a lower interest rate and then pay them off aggressively. Paid them off more than the minimum amount each month, which we did, so that we could get out of debt sooner.

In light of this testimony, we conclude that the district court did not abuse its broad discretion by allowing Bichrt's monthly housing expense of $1,430.

In sum, we affirm the district court's determination of Bichrt's reasonable monthly expenses, except in regard to Bichrt's savings expense, and we remand that issue to the district court for determination of a savings amount that is in keeping with the parties' marital standard of living and for amendment of Bichrt's reasonable monthly expenses accordingly. We reverse the district court's award of temporary spousal maintenance and remand to the district court with instructions to amend the judgment to award permanent spousal maintenance to Bichrt, leaving the award open for later modification. We leave entirely to the discretion of the district court whether to take additional evidence and whether to alter the amount of the spousal-maintenance award.

**Affirmed in part, reversed in part, and remanded.**